IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| YOHAN WEBB,<br><br>    Plaintiff,<br><br>vs.<br><br>MIKE STREETER, et al.<br><br>    Defendants. | 4:21CV3058<br><br>**MEMORANDUM<br>AND ORDER** |

## I. INTRODUCTION

  Plaintiff, Yohan Webb, a state prisoner who appears pro se, complains he was forcibly restrained and injected with psychotropic medication on one occasion while he was a patient at the Lincoln Regional Center ("LRC"). The court found on initial review of Webb's Amended Complaint that sufficient facts were alleged to state plausible claims for relief against 7 security specialists and 3 nurses at LRC, in their individual capacities only, for violating Webb's procedural and substantive due process rights. *See* Memorandum and Order entered on October 21, 2021 (Filing 51). This matter is now before the court on Defendants' motion for summary judgment based on qualified immunity (Filing 191), and on five motions filed by Webb (Filings 189, 223, 225, 227, and 231). Webb's motions will be taken up first.

## II. PLAINTIFF'S MOTIONS

### A. Filing 189

  On June 13, 2022, Webb filed a so-called "dispositive motion" (Filing 189) in which he requests that the court's January 20, 2022 order denying his motion for a default judgment against Defendant Sasheeny Wehrbein[1] (Filing 109) be set aside because the order was entered before the clerk of the court had entered a default against said Defendant. As previously explained, the reason no default was entered

---

[1] Ms. Wehrbein is identified as "Sasha Wehrbin" in Plaintiff's pleadings.

by the clerk is that the summons issued for Ms. Wehrbein was returned unexecuted (see Filing 106) and she entered a voluntary appearance by filing an answer on January 3, 2022 (see Filing 81), ten days before the filing of Webb's motion for default judgment (see Filing 83). Webb's "dispositive motion" is frivolous and will be denied.

### B. Filing 223

On August 3, 2022, Webb filed a "motion to take judicial notice" (Filing 223) in which he requests (1) that Defendants' motion for summary judgment be dismissed pursuant to Federal Rule of Civil Procedure 56(d)(2)[2]; (2) that Webb's medical records (Filing 187) be unsealed and considered by the court in connection with Defendants' motion for summary judgment; (3) that Webb be provided with unredacted copies of all his medical records; (4) that counsel be appointed for the purpose of filing a second amended complaint; (5) that a new scheduling order be entered; and (6) that Defendants be held not entitled to any immunity in their official capacities. This motion will be denied in all respects.

First of all, Rule 56(d)(2) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may … allow time to obtain affidavits or declarations or to take discovery …." Fed. R. Civ. P. 56(d)(2). A party seeking additional discovery under this rule has to show: "(1) that [she] [has] set forth in affidavit form the specific facts that [she] hope[s] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are essential to resist the summary judgment motion." *Yassin v. Weyker*, 39 F.4th 2086, 1091 (8th Cir. 2022) (quoting *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 895 (8th Cir. 2014)). "It is not enough to present a list of facts sought to be discovered. The nonmovant must 'articulate how those facts [a]re relevant to rebut the movant's showing of the absence of a genuine issue of fact.'" *In re Mirapex Prod. Liab. Litig.*, 912 F.3d 1129, 1135 (8th Cir. 2019) (quoting *Ray v. American Airlines, Inc.*, 609 F.3d 917, 923 (8th Cir. 2010)).

---

[2] Rule 56(d)(2) has replaced Rule 56(f)(2), which was cited by Plaintiff.

Webb's affidavit (Filing 214) fails to establish that the sought-after facts exist and are essential to resist the summary judgment motion. Moreover, Webb has been dilatory. This case has been pending since March 9, 2021, and a progression order permitting discovery has been in place since February 17, 2022. Webb has not provided any good reason for not completing discovery in a timely manner. *See Robinson v. Terex Corp.*, 439 F.3d 465, 467 (8th Cir. 2006) (nonmoving party must show that discovery has been inadequate). To the extent Webb is again asking the court to reconsider its rulings on his discovery motions, he has also failed to make the required showing. *See* Fed. R. Civ. P. 60(b) (stating grounds for granting relief from a judgment or order); *Williams v. York*, 891 F.3d 701, 706 (8th Cir. 2018) ("This court construes motions for reconsideration of non-final orders as motions under Rule 60(b) of the Federal Rules of Civil Procedure."). Webb cannot use a motion for reconsideration as a vehicle for simple reargument on the merits of the discovery motions. *See Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir. 1999) (discussing purpose of Rule 60(b) motions).

Second, the court ordered the clerk to change the designation of Webb's medical records from "sealed" to "restricted" on August 1, 2022. (See Filing 220.) Webb had requested that the documents be unsealed. (See Filing 218). Even though the documents (Filing 187) were previously sealed, a certificate of service shows Defendants' counsel mailed Webb a set of the documents at the time of filing. The change in designation from "sealed" to "restricted" (so as to be accessible by the parties but not the general public) therefore makes no practical difference.[3]

---

[3] "When a sealed document is filed, the System does not provide notice of electronic filing to all parties in the case. The filing party must use alternate forms of service to provide all parties entitled to notice with copies of the sealed document." NECivR 7.5(b) "When a sealed document is filed electronically, an entry appears on the electronic docket sheet only for court users. The parties and the public do not have remote access to the sealed document from the docket sheet unless otherwise ordered by the court." NECivR7.5(c). "When access to a document is restricted under the E-Government Act, an entry noting the restricted access appears on the public electronic docket sheet; however, only parties of record and court users may routinely access the document electronically. The public does not have remote access to the restricted document from the docket sheet. The court may grant the public leave for remote access upon motion." NECivR 5.3(c)(3).

Third, the court will not order that Webb be provided unredacted copies of his medical records. It was Webb's responsibility to obtain these documents from their custodians through normal discovery channels.

Fourth, the court will not appoint counsel so that Webb might file a second amended complaint to assert new, undisclosed claims based on undiscovered evidence. The deadline for filing a motion to amend the pleadings was April 28, 2022 (see Filing 87), Webb has not made the required showing for amending, *see* Fed. R. Civ. P. 15(a)(2) & NECivR 15.1(a), and none of the relevant factors for appointment of counsel weigh in Webb's favor. *See Recca v. Omaha Police Dep't*, 859 Fed. Appx. 3, 4 (8th Cir. 2021) (unpublished) ("Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the presence or absence of conflicting testimony.").

Fifth, the court will not enter a new scheduling order. Webb has not made a showing of good cause, *see* Fed. R. Civ. P. 16(b)(4), and this matter is now ripe for determination on Defendants' motion for summary judgment.

And, sixth, for the reasons previously stated by the court (see Filings 21 and 51), this case cannot proceed against Defendants in their official capacities.

### C. Filing 225

On August 8, 2022, Webb filed his eleventh motion for appointment of counsel (Filing 225). Webb states he "seeks court appointed counsel to ascertain his medical treatment records from LRC by signing a form for the release of confidential information …." This motion will be denied for the same reasons stated above with reference to Filing 223 and, moreover, because Webb has not shown that the records cannot be obtained without the assistance of counsel.

### D. Filing 227

Also on August 8, 2022, Webb filed a motion (Filing 227) to remove the "restricted" designation that the court placed on his medical records. The motion is made in the mistaken belief that the "restricted" designation prevents the use of the documents as evidence with Webb. Although the documents are not generally

4

available to the public, they can be and have been considered by the court in ruling on the summary judgment motion. The "restricted" designation was made solely for Webb's benefit, so as to maintain the confidentiality of his medical records. Thus, his motion to remove the designation will be denied.

### E. Filing 231

On August 18, 2022, Plaintiff file a motion for the status of Filing 189. As stated above, that motion is being denied as frivolous.

Turning next to Defendants' motion for summary judgment, the court finds after careful consideration of the record that the motion should be granted and that Webb's action should be dismissed with prejudice.

### III. SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a).

In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party and gives that party "the benefit of all reasonable inferences that can be drawn from the record." *State Nat'l Ins. Co., Inc. v. Washington Int'l Ins. Co.*, 304 F. Supp. 3d 827, 831-32 (D. Neb. 2018) (quoting *Minnesota ex rel. N. Pac Ctr., Inc. v. BNSF Ry. Co.*, 686 F.3d 567, 571 (8th Cir. 2012)). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. *See Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).

"There is a genuine dispute when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (internal quotations and citations omitted). "A fact

is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial responsibility of informing the court of the basis for the motion, and must identify those portions of the record which the moving party believes show the lack of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the moving party does so, the burden then shifts to the nonmoving party, who "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted. *Smith-Bunge v. Wisconsin Cent., Ltd.,* 946 F.3d 420, 424 (8th Cir. 2019).

The initial burden on a moving party "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) ("The moving party can satisfy its burden in either of two ways: it can produce evidence negating an essential element of the nonmoving party's case, or it can show that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial."); *Johnson v. Wheeling Mach. Prods*., 779 F.3d 514, 517 (8th Cir. 2015) (moving party need not produce evidence showing "the absence of a genuine issue of material fact.").

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.,* 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.,* 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc*., 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042).

6

## IV. QUALIFIED IMMUNITY

Qualified immunity shields officials from civil liability in a 42 U.S.C. §1983 action when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Morgan v. Robinson*, 920 F.3d 521 (8th Cir. 2019) (quoting *Pierson v. California*, 555 U.S. 223, 231 (2009)). Qualified immunity involves a two-step analysis: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.* at 523 (quoting *Nord v. Walsh Cty.*, 757 F.3d 734, 738 (8th Cir. 2014)). Unless both of these questions are answered affirmatively, a defendant is entitled to qualified immunity. Moreover, courts are permitted to exercise their sound discretion in determining which of the two prongs should be addressed first. *Id.* (quoting *Nord*, 757 F.3d at 738-39).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The clearly established right should not be defined at a high level of generality, but instead must be particularized to the facts of the case. *Id.* There does not need to be a case directly on point, but existing precedent "must have placed the statutory or constitutional question beyond debate." *Id.* at 524 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Qualified immunity gives government officials "breathing room" to make reasonable but mistaken judgments, and protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam)).

"Qualified immunity is an affirmative defense for which the defendant carries the burden of proof. The plaintiff, however, must demonstrate that the law is clearly established." *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002); *see Creighton v. Anderson*, 922 F.2d 443, 447 (8th Cir. 1990) ("Once the plaintiff has demonstrated that the law governing the plaintiffs' rights was clearly established at the time of the defendant's acts, the defendant has the burden of proof with respect to all other elements of the qualified immunity defense.").

## V. SUMMARY JUDGMENT PROCEDURE

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

This court's local rules further specify that "[t]he moving party must include in the brief in support of the summary judgment motion a separate statement of material facts," which "should consist of short numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph." NECivR 56.1(a) (underlining omitted). "The statement must not contain legal conclusions." *Id.* The opposing party's brief must include "a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). "Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed." *Id.*[4]

---

[4] The primary purpose of these rules "is to distill to a manageable volume the matters that must be reviewed by a court undertaking to decide whether a genuine issue of fact exists for trial. They are designed to prevent a district court from engaging in the proverbial search for a needle in the haystack." *Jones v. United Parcel Serv., Inc.,* 461 F.3d 982, 990 (8th Cir. 2006) (cleaned up). "Courts have neither the duty nor the time to investigate the record in search of an unidentified

A party's failure to comply with these requirements can have serious consequences: The moving party's "[f]ailure to submit a statement of facts" or "[f]ailure to provide citations to the exact locations in the record supporting the factual allegations may be grounds to deny the motion" for summary judgment. NECivR 56.1(a) (underlining omitted). On the other hand, "[p]roperly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(b)(1) (underlining omitted).

Defendants' brief (Filing 191) includes a separate statement of material facts which complies with Rule 56.1(a)(1). Webb has responded to these numbered statements of fact in an opposing brief (Filing 224), but his denials are not supported by his own an affidavit or declaration[5] or by any competent, admissible evidence. The nonmoving party "must respond by submitting evidentiary materials" of specific facts showing the presence of a genuine issue for trial. *Bedford v. Doe*, 880 F.3d 993, 997 (8th Cir. 2018) (quoting *Torgerson*, 643 F.3d at 1042). "The nonmoving party … cannot rest on mere denials or allegations. The nonmoving party must instead present enough evidence that a jury could reasonably find in his favor." *Id.* (citations omitted). Accordingly, Defendants' statements of facts are considered admitted.[6]

---

genuine issue of material fact to support a claim or a defense." *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1032 (8th Cir. 2007).

[5] "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Eighth Circuit has interpreted Rule 56(c) and 28 U.S.C. § 1746 as prohibiting a court's consideration of an unsworn statement or declaration when deciding a motion for summary judgment unless it is signed, dated, and certified as true and correct under penalty of perjury. *Zubrod v. Hoch*, 907 F.3d 568, 574 (8th Cir. 2018) (citing *Banks v. Deere*, 829 F.3d 661, 667 (8th Cir. 2016)).

[6] "Nebraska's rule concerning summary judgment procedure places clear requirements on the moving and opposing parties." *Tramp v. Assoc. Underwriters, Inc.*, 768 F.3d 793, 799 (8th Cir. 2014). "[T]he rules clearly require that [the opposing party] respond in kind, and in a specific fashion, to the statement of undisputed facts asserted by [the moving parties] in their motion for summary judgment." *Id.* (holding

9

Although Webb is proceeding pro se, he is bound by and must comply with all local and federal procedural rules. NEGenR 1.3(g); *see Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1067 (8th Cir. 2017) (status as pro se litigant does not excuse noncompliance with local rules regarding summary judgment).

## VI. UNDISPUTED MATERIAL FACTS

The court finds there is no genuine dispute as to the following material facts which are properly referenced in separate numbered paragraphs in Defendants' brief in support of their motion for summary judgment, and which have not been refuted by Webb:

1. Mr. Yohann Webb was admitted to the Lincoln Regional Center ("LRC") on December 4, 2019. (Filings 187-1, 187-2).

2. On December 5, 2019, Mr. Webb was provided with the standard Admission Packet that is given to all patients admitted to LRC. (Filing 189-1; 189-11).

3. Mr. Webb refused to sign acknowledgment and receipt of the packet but did provide information to staff in order for the packet to be completed. (Filing 189-1, p. 1).

4. Information provided included Mr. Webb's religious preferences; preferences about visitors; disclosure of records information; and emergency contact information. (Filing 189-1, pp. 4-8).

5. Mr. Webb initialed that he received the informational packet that included: Statement of Client Right and Responsibilities; Seclusion and Restraint Policy, Informed Consent Treatment Policy; and the Medication Policy. (Filing 189-1, p. 5).

6. The admission packet also indicated that the LRC policy on patient rights was posted in the common living areas of the hospital. (Filing 189-1, p. 5).

---

district court properly considered the movant's statement of facts admitted where opposing party did not comply with NECivR 56.1(b)(1)).

7. Mr. Webb received the Patient Rights and Responsibilities Policy, LRC RI-01. (Filing 189-1).

8. The Patient Rights and Responsibilities Policy explained to Mr. Webb that he could be involuntarily restrained and/or medicated during an emergency as determined by LRC staff. (Filing 189-2, pp. 2, 4).

9. At approximately 10:44 am on February 13, 2020, Mr. Webb was asked to turn over paperwork that he was carrying around the facility. (Filing 187-1, p. 32).

10. Mr. Webb responded to the staff request by verbally refusing the request (Filing 187-1, p. 32).

11. After Mr. Webb refused the staff request, he became agitated and began yelling at the staff. (Filing 187-1, p. 32).

12. When the LRC staff attempted to take Mr. Webb's paperwork from him, Mr. Webb became aggressive with the staff. (Filing 187-1, p. 32).

13. As a result of Mr. Webb's actions, the RN responding to the situation, Craig Cooper, directed for Mr. Webb to be placed in restraint and to receive medication in accordance with Policy PC-60 and the medication order entered by Mike Streeter. (Filing 187-1, p. 32); (Filing 187-2).

14. Following the direction of the medical staff, the security team restrained Mr. Webb in accordance with LRC policy. (Filing 187-2); (Filings 189-6; 189-8; 189-9).

15. Mr. Webb was given medication to help him calm down in accordance with the order entered by Mike Streeter. (Filing 187-1, p. 32; Filing 181-2).

16. The medications given are FDA approved drugs and were used in accordance with their FDA approved uses. (Filing 189-5 ¶ 5).

17. At approximately 12:00 pm, after Mr. Webb calmed down, he was released from the restraints in accordance with LRC Policy. (Filing 187-1, p. 32).

18. LRC staff continued to monitor Mr. Webb on 10-minute safety checks following the event. (Filing 187-1, p. 32).

19. LRC Nursing notes do not contain any report of an adverse reaction to the medications given. (Filing 187-1, p. 32).

20. Mr. Webb did not receive any follow-up treatment after being released from restraints. (Filing 187-2).

The court also takes judicial notice that Webb was a pretrial detainee who was committed to LRC on September 5, 2019, after being found incompetent to stand trial. *See State of Nebraska v. Yohan Webb*, Case No. CR19-6345, County Court of Lancaster County, Nebraska. On May 8, 2020, the county court found Webb's competency was restored. *See id.*[7]

## VII. ANALYSIS

The Supreme Court has held that under *Washington v. Harper,* 494 U.S. 210 (1990), "forcing antipsychotic drugs on a convicted prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness," and that "the Fourteenth Amendment affords at least as much protection to persons the State detains for trial." *Riggins v. Nevada*, 504 U.S. 127, 135 (1992).

At issue in *Harper* was the validity of the State's policy for the involuntary administration of antipsychotic drugs to prison inmates with mental disorders who were gravely disabled or posed a likelihood of serious harm to himself, others, or their property. 494 U.S. at 215. Procedural protections included: (1) a hearing; (2) a neutral and detached trier of fact; (3) notice; (4) the inmate's right to be present at the adversarial hearing; (5) the inmate's right to cross-examine witnesses; and (6) the right to appeal. *Id.* at 215-16; s*ee Green v. Dormire*, 691 F.3d 917, 924 (8th Cir. 2012). The Court approved this policy, holding that "given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the

---

[7] "[F]ederal courts may sua sponte take judicial notice of proceedings in other courts if they relate directly to the matters at issue." *United States v. Evans,* 690 F.3d 940, 943 (8th Cir.2012) (quoting *Conforti v. United States,* 74 F.3d 838, 840 (8th Cir. 1996))). Nebraska's judicial records may be retrieved online through the JUSTICE site, https://www.nebraska.gov/justice/case.cgi.

inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227.

In *Hogan v. Carter,* 85 F.3d 1113, 1117 (4th Cir. 1996), the United States Court of Appeals for the Fourth Circuit observed that while "*Harper* can be read as constitutionally requiring full independent review of a medical judgment before administering an antipsychotic drug, we believe that such a holding would be properly understood as addressed to the circumstance of long-term treatment there at issue, and not as extending to emergencies." The Fourth Circuit thus held that a doctor who authorized a single emergency dose of antipsychotic medication to an inmate in danger of injuring himself without first conducting a hearing was protected by qualified immunity. *See id.* at 1116 ("[A]lthough *Harper* had clearly established by the time that Dr. Carter ordered administration of the single emergency dose of Thorazine to Hogan that an inmate possesses a liberty interest in avoiding the administration of psychotropic drugs by prison officials, *Harper* had not established, let alone clearly established, the particular process that must precede the one-time administration of an antipsychotic drug in an emergency circumstance such as that confronted by Dr. Carter."). The Court further stated, "To the extent that *Harper* can be read as constitutionally requiring full independent review of a medical judgment before administering an antipsychotic drug, we believe that such a holding would be properly understood as addressed to the circumstance of long-term treatment there at issue, and not as extending to emergencies. Otherwise, the state would be obliged … to convene full-scale adversary proceedings at any hour of the night, appoint and retain counsel, subpoena witnesses, and allow for cross-examination—all while the very inmates for whose protection the state is constitutionally responsible remain in danger of injury at their own hands." *Id.* at 1117

Since then, it has become widely accepted that "the decision to administer antipsychotic medication over an inmate's objection comports with due process if the decision was made in the exercise of professional medical judgment and arose in the context of an emergency situation where the inmate posed a danger to himself or others." *Dancy v. Simms*, 116 F. Supp. 2d 652, 655 (D. Md. 2000), *aff'd sub nom. Dancy v. Gee*, 51 F. App'x 906 (4th Cir. 2002). *See, e.g.*, *Lurch v. Chaput*, No. 16 CIV. 2517 (AT), 2022 WL 889259, at *8 (S.D.N.Y. Mar. 25, 2022) ("The right to avoid the administration of medication is not absolute, and it is 'well-settled that a

13

patient's liberty interest in not being involuntarily medicated is overridden in an emergency, where failure to medicate forcibly would result in a substantial likelihood of physical harm to that patient, other patients, or to staff members of the institution.'") (quoting *Odom v. Bellevue Hosp. Ctr.*, No. 93 Civ. 2794, 1994 WL 323666 at *3 (S.D.N.Y. July 5, 1994)); *Pinkston v. Mississippi Dep't of Corr.*, No. 4:17-CV-39-DMB-DAS, 2021 WL 1206412, at *11 (N.D. Miss. Mar. 30, 2021) ("Ordinarily, the failure to provide the required procedural protections before forcible administration of a drug will result in a violation of a plaintiff's procedural due process rights. However, a prisoner is not entitled to such procedural protections when the circumstances suggest that he poses "such an imminent and serious danger to himself or others" that the defendant could not comply with the notice and hearing requirements.") (quoting *Kulas v. Valdez*, 159 F.3d 453, 456 (9th Cir. 1998)) (citation and footnote omitted); *Riddick v. Chevalier*, No. 3:11CV1555 SRU, 2013 WL 4823153, at *3 (D. Conn. Sept. 9, 2013) ("Courts applying *Harper* in the context of a single administration of antipsychotic medication in response to an emergency situation have relied on the opinion of the doctor administering the medication.… Several district courts also have held that isolated emergency administration of antipsychotic medication without a hearing does not violate due process.") (citing additional cases).

The undisputed evidence in this case establishes that medical staff ordered Plaintiff to be restrained and medicated on February 13, 2020, after he became aggressive with staff, and that applicable LRC policies for involuntary medication and use of restraints during a psychiatric emergency were followed. Plaintiff has failed to show there is a genuine issue of fact for trial on his procedural and substantive due process claims. Furthermore, even if there were some evidence of a constitutional violation, Plaintiff has not shown that the law was clearly established, such that a reasonable person in Defendants' positions would know that he or she was violating Plaintiff's rights. *See Chapman v. Haney,* 2004 WL 936682, at *32 (D.Neb. Apr. 30, 2004) (prison doctor and nurses who forcibly medicated inmate twice in July 20021 had qualified immunity because "the contours of the emergency exception to *Harper* were not sufficiently clear" for them to have understood they were violating the plaintiff's due process rights); *Knight v. Kamal*, No. 4:04 CV 3358, 2006 WL 2376918, at *7 (D. Neb. Aug. 16, 2006) (citing *Chapman* and finding "it was not 'clearly established,' and Dr. Kamal and Nurse Mildorfer did not

14

have 'fair warning,' that administering a one-time injection of Haldol and Ativan to the plaintiff on September 8, 2003, would violate the plaintiff's constitutional right to due process."). Defendants therefore are entitled to summary judgment based on qualified immunity.

## VIII. CONCLUSION

The court finds there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law.

IT IS ORDERED:

1. Defendants' motion for summary judgment (Filing 188) is granted.

2. Plaintiff's dispositive motion (Filing 189) is denied.

3. Plaintiff's motion to take judicial notice (Filing 223) is denied in all respects.

4. Plaintiff's motion to appoint counsel (Filing 225) is denied.

5. Plaintiff's motion to remove restriction (Filing 227) is denied.

6. Plaintiff's motion for status (Filing 231) is terminated based on the court's disposition of Filing 189.

7. Judgment shall be entered by separate document dismissing Plaintiff's action with prejudice.

Dated this 22nd day of August 2022.

BY THE COURT:

*Richard G. Kopf*
Richard G. Kopf
Senior United States District Judge